1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES H. GAINES,

                     Plaintiff,

     v.

VALVOLINE LLC,

                 Defendant.

CASE NO. 3:25-cv-05599-DGE

ORDER ON MOTION TO DISMISS
(DKT. NO. 27)

## I       INTRODUCTION

This matter comes before the Court on Defendant Valvoline LLC's motion to dismiss Counts I (violation of the Automotive Repair Facilities Act) and II (violation of the Washington Consumer Protection Act) of Plaintiff's complaint.  (Dkt. No. 27.)  For the reasons set forth below, Defendant's motion is GRANTED.

## II       FACTUAL AND PROCEDURAL BACKGROUND

In March 2024, Plaintiff Charles H. Gaines took his car to a Valvoline Instant Oil Change ("VIOC") location in Sumner, Washington to get his oil changed.  (Dkt. No. 9 at 1.)  VIOC

1   employees determined his transmission fluid should be changed, so they performed the service,

2   but "negligently failed to refill the transmission case." (*Id.* at 2.) Plaintiff "believ[ed] his vehicle

3   was good to go"; he paid for the service and left. (*Id.*) Plaintiff alleges three days later, his

4   vehicle began "knocking, rattling, and shaking," and the "check engine" light came on. (*Id.* at

5   4.) He took the car to Rempt Motor Company for an inspection, where the technicians

6   discovered Plaintiff's car had no transmission fluid. (*Id.*) Rempt performed a full transmission

7   service, but damage to the transmission had apparently already been done; the technicians

8   recommended a full transmission replacement to the tune of over $10,000. (*Id.* at 4–5.)

9       Plaintiff alleges he returned to VIOC and spoke with Ken Nelson, the general manager,

10  about the damaged transmission following his service at VIOC. (*Id.* at 5.) Nelson "denied all

11  responsibility for damaging the Plaintiff's Vehicle." (*Id.*) Plaintiff alleges he continues to make

12  monthly loan and insurance payments on the car, but it is no longer drivable. (*Id.*)

13      Plaintiff filed a lawsuit in Pierce County Superior Court against Valvoline and Jane and

14  John Doe. (Dkt. No. 1-1.) He brought three causes of action under Washington law: (1)

15  violation of the Auto Repair Facilities Act ("ARFA"), Washington Revised Code § 46.71.005 *et.*

16  *seq.*; (2) violation of the Consumer Protection Act ("CPA"), Washington Revised Code

17  § 19.86.010 *et. seq.*; and (3) negligence. (*Id.* at 7–12.) Plaintiff did not quantify his damages

18  and generally requested "an amount that will compensate him for all of the damages he has

19  sustained." (*Id.* at 12.)

20      Defendant filed a notice of removal on July 9, 2025. (Dkt. No. 1.) It asserted Plaintiff

21  was a citizen of Washington, Valvoline (through its sole member) was a citizen of Kentucky, and

22  Jane and John Doe were fraudulently joined to destroy diversity. (*Id.* at 3–4.) Defendant quickly

23  filed a motion to dismiss Plaintiff's statutory claims (*see* Dkt. No. 8); Plaintiff amended his

24

1    complaint to add Ken Nelson, the general manager of the Sumner VIOC.[1]  (Dkt. No. 9 at 3.)

2    Plaintiff then filed a motion to remand, arguing the parties were not diverse, because Nelson was

3    a citizen of Washington like Plaintiff.  (Dkt. No. 11.)  Defendant responded to Plaintiff's motion

4    to remand and again argued Nelson had been fraudulently joined to evade removal.  (Dkt. No.

5    22.)

6        This Court denied the motion to remand.  In its order, the Court determined Plaintiff

7    failed to state a claim against Nelson on either statutory claim or the negligence claim and

8    therefore concluded Nelson had been fraudulently joined.  (Dkt. No. 25 at 5–7.)  The Court sua

9    sponte dismissed Nelson and Jane Doe Nelson as defendants, and the case proceeded against

10   Valvoline exclusively.[2]  (*Id.* at 8.)

11       On September 5, Defendant filed a renewed motion to dismiss Plaintiff's claims for

12   violation of the ARFA and the CPA pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt.

13   No. 27.)

14                           **III    LEGAL STANDARD**

15       Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack

16   of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

17   theory.  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).  Material

18   allegations are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston*

19   *v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6)

20   motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

21

22   [1] Nelson's wife remained identified as Jane Doe Nelson.

23   [2] In its order denying the motion to remand, the Court also resolved the question of whether the
amount in controversy had been met, determining the $131,298.53 settlement demand Plaintiff
sent to Defendant was sufficient evidence of the amount in controversy.  (*See* Dkt. No. 25 at 7–8)
24   (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)).

1    the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

2    formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

3    *Twombly*, 550 U.S. 544, 554–555 (2007) (internal citations omitted). "Factual allegations must

4    be enough to raise a right to relief above the speculative level, on the assumption that all the

5    allegations in the complaint are true [even if doubtful in fact]." *Id*. at 555. The complaint must

6    allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547. "The court

7    need not, however, accept as true allegations that contradict matters properly subject to judicial

8    notice or by exhibit. Nor is the court required to accept as true allegations that are merely

9    conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden*

10   *State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187

11   (9th Cir. 2001) (internal citation omitted).

## IV     DISCUSSION

### A.  ARFA Violation Claim

14         The ARFA is a consumer protection statute with the purpose of "enhancing the safety and

15   reliability of motor vehicles served by auto repair facilities in the state of Washington" through

16   "improved communications and accurate representations between automative repair facilities and

17   the customers." Wash. Rev. Code § 46.71.005. The statutory scheme includes specific

18   requirements, including that all estimates that exceed $100 must be in writing (*id.* § 46.71.015);

19   all replaced parts must be returned to the customer after the work is completed, if the customer

20   requests the parts at the time the repairs are authorized (*id.* § 46.71.021); and auto repair facilities

21   must have prominent signage that informs customers of their rights under the statute (*id.*

22   § 46.71.031). The statute also proscribes a list of unlawful practices, which includes among

23   other things, "[a]dvertising that is false, deceptive, or misleading," "[m]aterially understating or

24

1    misstating the estimated price for a specific repair procedure," and "[r]etaining payment from a

2    customer for parts not delivered or installed or a labor operation or repair procedure that has not

3    actually been performed." *Id.* § 46.71.045(1)–(3).

4        In his complaint, Plaintiff does not allege that Defendant violated any specific provision

5    of the ARFA.  (*See* Dkt. No. 9 at 7–9.)  Defendant points out as much and asserts that Plaintiff

6    instead appears to base his ARFA violation claim on the prohibition against "[a]dvertising that is

7    false, deceptive, or misleading."[3]  (Dkt. No. 27 at 4.)  According to Defendant, the advertising

8    statements Plaintiff identifies are "false, deceptive, or misleading" are not actionable.  (*Id.* at 4–

9    5.)  The Court agrees.

10       "General, subjective, unverifiable claims about a product or service are 'mere puffery'

11   and cannot give rise to a false advertising claim."  *Sauk-Suiattle Indian Tribe v. City of Seattle*,

12   525 P.3d 238, 243 (Wash. Ct. App. 2023) (citing *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d

13   1038, 1053 (9th Cir. 2008)).  "Mere puffery" has been described as "vague or highly subjective

14   terms that cannot be substantiated," and includes subjective statements, opinions, hyperbole, and

15   other representations "ordinary consumers do not take seriously."  *State v. Living Essentials,*

16   *LLC*, 436 P.3d 857, 870 (Wash. Ct. App. 2019) (citation and punctuation omitted).  By contrast,

17   representations of fact can be tested.  *Id.*; *see also Certification from U.S. Dist. Ct. for W. Dist. of*

18   *Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025) (en banc) (comparing puffery

19

20   [3] In his response to Defendant's motion to dismiss, Plaintiff argues he is also alleging Defendant
     violated the ARFA by "[r]etaining payment from a customer for parts not delivered or installed
21   or a labor operation or repair procedure that has not actually been performed." (Dkt. No. 29 at 3,
     6.)  But Plaintiff does not assert this basis for liability anywhere in his complaint (*see* Dkt. No.
22   9), so the argument is not properly before the Court.  *See Schneider v. Cal. Dep't of Corr.*, 151
     F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'new' allegations contained in the [plaintiff's] opposition
23   motion . . . are irrelevant for Rule 12(b)(6) purposes . . . a court *may not* look beyond the
     complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's
24   motion to dismiss").

1    to representation of facts such as "the duration or availability of a promotion, its terms and

2    nature, the cost of goods, and other facts Washington residents would depend on in making their

3    consumer decisions").

4        Here, Plaintiff alleges that Defendant's statement on its website that it is a "leader in the

5    quick lube industry" and that customers trust its "solid promise" to be "the quick, easy, and

6    trusted way to avoid costly, inconvenient breakdowns" is deceptive and misleading.  (Dkt. No. 9

7    at 6.)  This is so, according to Plaintiff, because the statements would lead a reasonable customer

8    to believe Defendant "offered competent and reliable oil change and maintenance services."

9    (*Id.*)  But these statements are exactly the kind of general, "unverifiable claims" about a service

10   that are not actionable under Washington law.  *Sauk-Seattle*, 525 P.3d at 243 (citation omitted);

11   *see also Newcal Indus.*, 513 F.3d at 1053 (holding that a "general assertion" that a copy machine

12   cost-per-copy contract provides customers with "low costs and with flexibility" is "classic

13   puffery").  As alleged, Defendant's advertisement provides no information that could be tested or

14   substantiated, such as how much an oil change costs, how long it will take, or whether a

15   promotion is offered at a certain time.  Because the advertisement contains nothing more than

16   "vague [and] highly subjective term[s] that cannot be substantiated," it cannot give rise to an

17   ARFA claim for false, deceptive, or misleading advertising.  *Living Essentials*, 436 P.3d at 870

18   (citation omitted).  Plaintiff's ARFA violation claim is therefore DISMISSED.

19       **B.  CPA Violation Claim**

20       The Washington CPA makes unlawful any "[u]nfair methods of competition and unfair

21   or deceptive acts or practices in the conduct of any trade or commerce."  Wash. Rev. Code

22   § 19.86.020.  There are two ways to prove a claim for violation of the CPA.  First, a plaintiff

23   must establish five elements: "(1) an unfair or deceptive act or practice; (2) in the conduct of

24

trade or commerce; (3) which impacts the public interest; (4) injury to the plaintiffs in their business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Scott v. Amazon.com, Inc.*, 559 P.3d 528, 544 (Wash Ct. App. 2024) (quoting *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 147 (Wash. 1990) (en banc)). All five elements must be established for a CPA violation claim to be successful. *Keodalah v. Allstate Ins. Co.*, 449 P.3d 1040, 1047 (Wash. 2019) (en banc) (citation omitted). Alternatively, if another statute declares that a violation is a "per se unfair trade practice," then violation of that statute can satisfy the first two elements of a CPA claim. *Scott v. Am. Express Nat'l Bank*, 514 P.3d 695, 703 (Wash Ct. App. 2022).

### 1.  Per Se CPA Violation

Violation of the ARFA is an "unfair or deceptive act in trade or commerce" and constitutes a per se violation of the CPA. Wash. Rev. Code § 46.71.070. Plaintiff alleges all the "foregoing violations of the ARFA constitute separate and independent violations of the CPA." (Dkt. No. 9 at 9.) But as discussed, Plaintiff fails to state a claim for a violation of the ARFA. *See* Section IV(A) *supra*. Therefore, there is no per se violation of the CPA.

### 2.  Elements Test CPA Violation

Defendant argues that Plaintiff cannot establish elements one and three of his CPA violation claim. (Dkt. No. 27 at 6–8.) It appears from the face of the complaint that the second, fourth, and fifth elements have been satisfied.[4] Thus, the debate between the parties centers on

---

[4] For the second element, Plaintiff alleges Defendant is a "service facility" that conducts business in Washington, which appears to fall within the broad statutory definition of commerce under Washington Revised Code § 19.86.010(2). (Dkt. No. 9 at 3.) Plaintiff alleges his car was damaged when VIOC employees failed to replace the transmission fluid, rendering it "no longer drivable," which satisfies the injury element. (*Id.* at 5.) Finally, Plaintiff alleges that Defendant's allegedly unfair or deceptive act caused the injury to his vehicle by leading Plaintiff

1    whether Plaintiff has alleged that Defendant's conduct was unfair or has the capacity to deceive

2    the public, and whether Plaintiff has sufficiently made a showing of an impact on public interest.

3    The Court concludes Plaintiff fails to plead either element.

### a.   Element 3: Impact on Public Interest

5            Ordinarily, breach of a private contract affecting "no one but the parties to the contract"

6    does not affect the public interest.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*

7    *Co.*, 719 P.2d 531, 538 (Wash. 1986) (en banc); *see also Behnke v. Ahrens*, 294 P.3d 729, 735–

8    736 (Wash. Ct. App. 2012) ("the concern of Washington courts has been to rule out those

9    deceptive acts and practices that are unique to the relationship between plaintiff and defendant");

10   *Jackson v. Harkey*, 704 P.2d 687, 690 (Wash. Ct. App. 1985) ("[t]he court will not find an

11   impact on the public interest when it cannot determine . . . whether the defendant's act is a

12   deceptive practice or simply an inadvertent isolated mistake") (citation omitted).  However, a

13   private dispute can become one that impacts the public if there is a "likelihood that additional

14   plaintiffs have been or will be injured in exactly the same fashion."  *Hangman Ridge*, 719 P.2d at

15   538.

16           Even accepting as true the allegations in the complaint, the Court finds that Plaintiff has

17   not pled sufficient facts to link Defendant's alleged defective work[5] to an impact on the public

18   ────────────────────

19   to believe VIOC provided trustworthy services and had returned the vehicle to Plaintiff in "good
     running condition."  (*Id.* at 6, 10–11.)  While the Court disagrees that Defendant's conduct

20   constituted an unfair or deceptive act, *see* Section IV(B)(2)(b) *infra*, for the purposes of element
     five, Plaintiff has sufficiently alleged a causal link between the act and his injury.

21   [5] The operative complaint is unclear as to the exact nature of the work Defendant performed or

22   agreed to perform.  Plaintiff first alleges he purchased a full-service oil change, "which included
     checking the automatic transmission fluid."  (Dkt. No. 9 at 1.)  Plaintiff then asserts Defendant

23   "drained all of the transmission fluid from the Vehicle, but negligently failed to refill the
     transmission case before [Plaintiff] left."  (*Id.* at 2.)  Later, Plaintiff's recitation of the facts is
     streamlined: he states Defendant's full-service oil change "includes checking the automatic

24

1    interest.  Plaintiff generally alleges Defendant's conduct had a public impact because the facts

2    "reveal a pattern of conduct by the repair facility that has the potential to injure future innocent

3    consumers." (Dkt. No. 9 at 11.)  But to establish an impact on public interest, there must be a

4    "real and substantial potential for repetition of [the defendant's conduct], as opposed to a

5    hypothetical possibility of an isolated unfair or deceptive act's being repeated." *Michael v.*

6    *Mosquera-Lacy*, 200 P.3d 695, 700 (Wash. 2009) (en banc) (citation omitted).  Here, Plaintiff

7    pleads only conclusory allegations that there is potential for repetition.  He alleges Defendant's

8    actions reveal a "pattern of conduct" which could injure future consumers, but he does not

9    identify facts that support this contention—nor does he explain what "pattern of conduct"

10   Defendant even engaged in.  (Dkt. No. 9 at 11.)  Indeed, the specific facts in Plaintiff's complaint

11   all focus on his individualized dispute with Defendant and indicate Defendant engaged in an

12   "inadvertent isolated mistake" rather than a deceptive act.  *Jackson*, 704 P.2d at 690; (*see* Dkt.

13   No. 9 at 6, 10–11.)  For an inherently private dispute to become one that impacts the public, there

14   must be a likelihood that additional plaintiffs "have been or will be injured in *exactly the same*

15   *fashion*." *Hangman Ridge*, 719 P.2d at 538 (emphasis added).  Plaintiff alleges no such facts

16   here.

17        Plaintiff also alleges "[s]uch wrongful conduct reveals unfair trade practices which has

18   the potential to harm the repair facility's competitors." (Dkt. No. 9 at 11.)  But conduct that is

19   _____

20   transmission fluid" but he does not specifically allege Defendant drained or failed to replace his
     transmission fluid.  (*Id.* at 4.)  This version of events is reinforced by the invoice attached to the

21   complaint, which identifies an oil change was performed but does not identify that a transmission
     fluid replacement occurred.  (*See id.* at 15.)  The invoice merely notes that one of several

22   maintenance checks performed included the "Transmission Fluid Level." (*Id.*)  Additionally, the
     invoice from Rempt states, "Client took vehicle to oil change spot and now the engine is making

23   noises." (*Id.* at 19.)  There is no mention of an allegedly faulty transmission fluid change or that
     such work was performed.  (*Id.*)  Taking these conflicting statements together, it is unclear both

24   what work Defendant agreed to perform and what work it ultimately did perform.

1    not directed at the public and is instead directed at a competitor "lacks the capacity to impact the

2    public in general." *Evergreen Moneysource Mtg. Co. v. Shannon*, 274 P.3d 375, 385 (Wash. Ct.

3    App. 2012) (citation omitted).  Plaintiff therefore fails to plead facts establishing an impact on

4    the public interest.

**b.  Element 1: Unfairness or Capacity to Deceive**

6        Although Plaintiff's failure to prove a public impact is fatal to his CPA violation claim,

7    *see Keodalah*, 449 P.3d at 1047, the Court comments briefly on the first element: whether

8    Defendant engaged in an unfair or deceptive act.  The CPA does not define "unfair" or

9    "deceptive" (*see* Wash. Rev. Code § 19.86.010), so the plaintiff must show the conduct is unfair

10    or deceptive "under a case-specific analysis of those terms."  *Greenberg v. Amazon.com, Inc.*,

11    553 P.3d 626, 638 (Wash. 2024) (en banc) (citation omitted); *see also Klem v. Wash. Mut. Bank*,

12    295 P.3d 1179, 1187 (Wash. 2013) (en banc) (the definitions have evolved through a "gradual

13    process of judicial inclusion and exclusion") (citation omitted).  General and unverifiable claims

14    about a product or service "cannot give rise to . . . an unfair or deceptive act."  *Babb v. Regal

15    Marine Indus., Inc.*, No. 43934–4–II, 2014 WL 690154, at *3 (Wash. Ct. App. Feb. 20, 2014)

16    (citing *Newcal Indus.*, 513 F.3d at 1053).  To constitute a deceptive practice, an advertisement

17    "need only have a tendency or [c]apacity to deceive a substantial portion of the purchasing

18    public."  *Fisher v. World-Wide Trophy Outfitters, Ltd.*, 551 P.2d 1398, 1403 (Wash. Ct. App.

19    1976) (citation omitted).  Plaintiff fails to make that showing.

20        The complaint alleges Defendant "deceptively states in its advertising that it provides

21    trustworthy service, and that it offers a 'solid promise' to consumers that [Defendant]'s services

22    will prevent 'inconvenient breakdowns.'"  (Dkt. No. 9 at 10.)  Plaintiff vaguely gestures at the

23    fact that the advertisement would lead a reasonable customer to believe Defendant offered

24

1    "competent and reliable oil change and maintenance services" and concludes the statement goes

2    beyond "puffing." (*Id.* at 6.)  However, Plaintiff provides no factual support for this conclusion,

3    and as the Court has discussed, these types of subjective statements are the sort of hyperbolic

4    representations "ordinary consumers do not take seriously." *Living Essentials,* 436 P.3d at 870

5    (citation omitted).  Plaintiff also alleges Defendant "deceptively and unfairly stated that it had

6    serviced the Vehicle and returned it to the Plaintiff in good running condition." (Dkt. No. 9 at

7    10.)  But the fact that Plaintiff's vehicle was allegedly damaged by Defendant—i.e., the service

8    Defendant allegedly agreed to provide was not performed as "promised"—does not raise the

9    inference that Defendant was falsely advertising with the intent to deceive or induce Plaintiff into

10    taking his car to VIOC for an oil change, nor that it intentionally damaged Plaintiff's car with the

11    intent to deceive him into paying for a service it did not provide.  Construing all facts in

12    Plaintiff's favor, Plaintiff cannot plead that Defendant engaged in an unfair or deceptive act.

13    Plaintiff's CPA violation claim is therefore DISMISSED.

## V    CONCLUSION

15        Defendant's motion to dismiss (Dkt. No. 27) is GRANTED.  Plaintiff's claims for

16    violation of the ARFA and the CPA are DISMISSED without prejudice.

18        Dated this 22nd day of October 2025.



David G. Estudillo
United States District Judge